CITY OF HOUSTON, Appellant,

v.

R. F. BALL CONSTRUCTION COMPANY, INC., et al., Appellees.

No. 1750.

Court of Civil Appeals of Texas, Houston (14th Dist.).

July 12, 1978.

Rehearing Denied Aug. 30, 1978.

**76**

Robert M. Collie, Jr., City Atty., Joseph G. Rollins, Senior Asst. City Atty., Dale M. Tingleaf, Asst. City Atty., Houston, for appellant.

Owen W. Cecil, Brian S. Greig, Fulbright & Jaworski, Houston, for appellees.

COULSON, Justice.

The City of Houston appeals from an adverse judgment entered in a suit brought by R. F. Ball Construction Company, Inc. and Southwest Ball Construction Company for damages occasioned by delay and hindrance in the construction of passenger terminal facilities at Houston Intercontinental Airport. We hold that the construction contract precludes recovery of such damages. We reverse and render judgment that the plaintiffs take nothing.

On June 15, 1965, the City of Houston ("City") awarded R. F. Ball Construction Company, Inc. and Southwest Ball Construction Company (jointly referred to as "Ball") a contract for the construction of the following parts of Houston Intercontinental Airport: two five-level terminal buildings, seven flight stations, seven connecting concourses to join the flight stations to the terminals, a battery train tunnel and pedestrian tunnel, a utility tunnel, two U–ramps (one at each terminal), four spiral ramps (two at each terminal), and four baggage cart tunnels. Ball began work on the project on June 16, 1965 and

was scheduled to complete it on April 30, 1967. Work was not in fact completed until the opening date of the airport, June 9, 1969. During the performance of the work the City issued, as it was contractually authorized to do, several hundred "Change Items" and between eight hundred and nine hundred "Clarifications" varying the original plans and specifications. Although the City paid Ball $2,404,194.02 for such changes, this payment was for the "direct" costs of the changes and did not cover the "indirect" or "impact" costs occasioned by the delay, disruption, and general hindrance of efficient work which inevitably resulted from the changes. Following an unsuccessful demand on the City for payment of such costs, Ball filed suit, on behalf of itself and its subcontractors, for the damages sustained as a result of the delay and hindrance of work caused by the City's changes. At the conclusion of a two month trial, thirteen special issues were submitted to the jury. In response to the first eight of these issues the jury found that:

(1) The number of Change Items and Clarifications was greater than was foreseen or contemplated by Ball and the City at the time they entered into the contract;

(2) The number of Change Items and Clarifications caused Ball to be delayed in the completion of its work under the contract;

(3) Such delay was not foreseen or contemplated by Ball and the City at the time they entered into the contract;

(4) Such delay caused Ball to perform additional work;

(5) The number of Change Items and Clarifications caused Ball to be hindered in the completion of its work under the contract;

(6) Such hindrance was not foreseen or contemplated by Ball and the City at the time they entered into the contract;

(7) Such hindrance caused Ball to perform additional work;

(8) $3,759,209.90 would reasonably compensate Ball for the additional work

performed by it and its subcontractors for which Ball had not been paid.

The remaining issues, dealing with recovery in quantum meruit, were submitted conditionally and were not answered by the jury. The trial court added pre-judgment interest to the amount of damages found by the jury and rendered judgment for Ball totaling $5,108,765.50, from which the City brings this appeal.

█ In the absence of provision to the contrary, a contractor, such as Ball, is entitled to recover damages from a contractee, such as the City, for losses due to delay and hindrance of work if it proves (1) that its work was delayed or hindered, (2) that it suffered damages because of the delay or hindrance, and (3) that the contractee was responsible for the act or omission which caused the delay or hindrance. *Anderson Dev. Corp. v. Coastal States, Etc.,* 543 S.W.2d 402 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n. r. e.); *Bd. of Regents, U. of Tex. v. S. & G. Const. Co.,* 529 S.W.2d 90 (Tex.Civ.App.—Austin 1975, writ ref'd n. r. e.); H. Cohen, Public Construction Contracts and the Law § 8.3, at 229 (1961). However, the parties may foresee the possibility of delay and contractually provide for the remedy to be applied if that possibility occurs. Ball's contract with the City contains such a provision:

13. Delays.—The Contractor shall receive no compensation for delays or hindrances to the work, except when direct and unavoidable extra cost to the Contractor is caused by the failure of the City to provide information or material, if any, which is to be furnished by the City. When such extra compensation is claimed a written statement thereof shall be presented by the Contractor to the Engineer and if by him found correct shall be approved and referred by him to the Council for final approval or disapproval; and the action thereon by the Council shall be final and binding. If delay is caused by specific orders given by the Engineers to stop work, or by the performance of extra work, or by the failure of the City to provide material or necessary instructions for carrying on the work, the such delay will entitle the Contractor to an equivalent extension of time, his application for which shall, however, be subject to the approval of the City Council; and no such extension of time shall release the Contractor or the surety on his performance bond from all his obligations hereunder which shall remain in full force until the discharge of the contract.

Similar provisions in other construction contracts have been given effect by the courts. *Coleman Bros. Corporation v. Commonwealth,* 307 Mass. 205, 29 N.E.2d 832, 838 (1940); *Ace Stone, Inc. v. Wayne Tp.,* 47 N.J. 431, 221 A.2d 515, 517 (1966); *Psaty & Fuhrman v. Housing Authority,* 76 R.I. 87, 68 A.2d 32, 36 (1949); *Housing Authority of City of Dallas v. Hubbell,* 325 S.W.2d 880 (Tex.Civ.App.—Dallas 1959, writ ref'd n. r. e.).

█ One of the exceptions to the application of a "no damages" provision is that a delay which was not intended or contemplated by the parties to be within the purview of the provision is not governed by it. *Ace Stone, Inc. v. Wayne Tp.,* 47 N.J. 431, 221 A.2d 515 (1966); *Western Engineers, Inc. v. State Road Commission,* 20 Utah 2d 294, 437 P.2d 216 (1968). It is within this exception that Ball's claim must rest since findings on the other possible exceptions were not requested and their existence was not established as a matter of law.[1]

Ball received jury findings that it and the City did not foresee the great number of "Change Items" and "Clarifications" when

1. The other generally recognized exceptions are: (1) Delay resulting from fraud, misrepresentation, or other bad faith on the part of one seeking the benefit of the provision; (2) Delay which has extended such an unreasonable length of time that the party delayed would have been justified in abandoning the contract; (3) Delay not within the specifically enumerated delays to which the "no damages" clause applies. *Western Engineers, Inc. v. State Road Commission,* 20 Utah 2d 294, 437 P.2d 216 (1968). *See generally* Annot. 74 A.L.R.3rd 187 (1976).

they entered into their contract, and that they did not foresee the delay and hindrance they would occasion. From this, Ball concludes that it has placed itself within the exception. This is not so.[2] Ball has merely established that the delays and hindrances were of a certain character, that is, unforeseen ones. Ball has not established that the clause was not intended to apply to unforeseen delays and hindrances and that it was only intended to apply to foreseeable ones.

■ It is the general rule of the law of contracts that when an unambiguous writing has been entered into between the parties, the courts will look to the written instrument as the expression of the parties' intention since it is the parties' objective, not subjective, intent which is significant. *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515 (Tex.1968); Holmes, *The Path of the Law,* 10 Harv.L. Rev. 457, 464 (1897). Similar "no damages" clauses have been held unambiguous by other courts. *O'Connor v. Smith,* 84 Tex. 232, 19 S.W. 168, 171 (1892); *Western Engineers, Inc. v. State Road Commission,* 20 Utah 2d 294, 437 P.2d 216, 218 (1968). A reading of the clause in issue convinces us that it is unambiguous. As such, extrinsic evidence may not be used to explain its meaning.

The clause does not limit its application to those delays and hindrances that were foreseen by the parties when they entered into the contract. Instead, it embraces all delays and hindrances which may occur during the course of the work, foreseen and unforeseen. Indeed, it is the unforeseen events which occasion the broad language of the clause since foreseeable ones could be readily provided for by specific language.[3]

*Cunningham Brothers, Inc. v. City of Waterloo,* 254 Iowa 659, 117 N.W.2d 46, 49 (1962); *Western Engineers, Inc. v. State Road Commission,* 20 Utah 2d 294, 437 P.2d 216, 218 (1968).

■ Since the "no damages" clause covers the type of delay and hindrance which the jury found Ball's to be, the clause covers Ball's compensation for them. Ball is entitled to "no compensation" except for "direct and unavoidable extra costs . . . caused by the failure of the City to provide information or material, if any, which is to be furnished by the City." Ball has failed to establish its right to compensation for such specific costs and, consequently, is not entitled to compensation for delay and hindrance.

This seems unduly harsh. However, the language used by the United States Supreme Court in an almost identical situation is instructive:

> Men who take $1,000,000 contracts for government buildings are neither unsophisticated nor careless. Inexperience and inattention are more likely to be found in other parties to such contracts than the contractors, and the presumption is obvious and strong that the men signing such a contract as we have here protected themselves against such delays as are complained of by the higher price exacted for the work.

*Wells Bros. Co. v. United States,* 254 U.S. 83, 87, 41 S.Ct. 34, 35, 65 L.Ed. 148 (1920).

Reversed and rendered.

---

2. Ball cites several cases which state that if the delays *or their cause* were beyond the contemplation of the parties, then the "no damages" clause does not apply. Typical of such cases is *Grant Construction Co. v. Burns,* 92 Idaho 408, 443 P.2d 1005, 1012 (1968). We disagree with such cases since they preclude operation of the clause in situations where the character of the delay was unforeseen—the precise sort of delays the clause is designed to cover. In this regard see *Western Engineers, Inc. v. State*

*Road Commission,* 20 Utah 2d 294, 437 P.2d 216, 218 (1968) and *Cunningham Brothers, Inc. v. City of Waterloo,* 254 Iowa 659, 117 N.W.2d 46, 49 (1962).

3. An example of the use of specific language to cover foreseeable events is found in this case in the provision for payment for certain costs occasioned by "the failure of the City to provide information or material, if any, which is to be furnished by the City."