WILSON & ENGLISH CONSTRUCTION COMPANY, Appellant, v. THE NEW YORK CENTRAL RAILROAD COMPANY, Respondent.

Second Department, March 9, 1934.

*Albert Ritchie*, for the appellant.

*Kenneth O. Mott-Smith* [*Frederick L. Wheeler, Gerald E. Dwyer* and *Clive C. Handy* with him on the brief], for the respondent.

SCUDDER, J. This action is to recover $30,639.27 as damages for alleged acts of omission of the defendant which plaintiff claims prevented it from completing on time certain construction work covered by a contract between them. Plaintiff alleges that what could and should have been finished while the season was open, and on or before November 7, 1929, was thrown into freezing weather, necessitating an additional cost to the plaintiff of $30,639.27 in excess of its normal cost.

The contract provides for the construction by plaintiff of a spur of defendant's railroad, the work to be done at unit prices, and to be finished within 125 working days from June 12, 1929, the contract date.

It is alleged that the defendant agreed that it had the right of way; would supply all track material (by a later modification of the contract the ties were excepted); and would furnish plans for a bridge which plaintiff was to build; that defendant did not have the right of way, and did not obtain it until October 5, 1929; did not furnish the track material in accordance with the schedule agreed upon, or within a reasonable time; did not furnish the plans for the erection of the bridge until September 1, 1929; and that, due to defendant's failures in these respects, plaintiff could not complete the construction by November 7, 1929, and the work was thrown into wintry weather, with the ground frozen and covered with snow.

Plaintiff's time to finish the work was extended to December 31, 1929.

The answer denies the delays and sets up, as separate defenses,

that the plaintiff waived any claim by not protesting while the work was in progress, and, itself, was responsible for the delays.

The answer made no point of the provision appearing in the printed part of the contract upon which, on the trial, the motion was made to dismiss the complaint and upon which it was granted. That provision reads as follows: " It is expressly understood and agreed that the Contractor shall not be entitled to claim or receive from the Company any sum whatever in excess of the contract price for the work provided for herein, by reason or on account of, any delay caused in such work by the Company."

The contract is a printed form used by the defendant for construction work, with typewritten pages added. It contains a fifty dollars per day liquidated damage clause for failure to complete. It was executed early in July, but by letter of June 12, 1929, plaintiff was notified that the contract had been awarded to it, and started work about June 17, 1929.

The contract provided that detailed plans for the substructure and superstructure of the bridge were to be furnished later.

After repeated demands for the bridge plans, they were received August eighth; and about August fifteenth the plaintiff was notified that as to the superstructure they had been approved. Plaintiff immediately ordered the structural steel in accordance with the plans.

It appears that the reasonable time for fabricating the steel after placing such an order is two months. It was received on the job October 10, 1929, and the bridge was far enough advanced to permit the passage of trains by October 17, 1929.

This bridge was located about two miles from the point where the spur track in question makes connection with the railroad. The evidence is to the effect that the contractor had planned to erect the bridge and use it in carrying materials needed in the work south of that point; and by reason of the delay in the receipt of the plans it had to truck a good part of the materials, which otherwise could have been carried by rail over the bridge.

The contract contains a provision that the contractor shall prepare a schedule stating when track material will be required, and shall give the engineer at least thirty days' advance notice of the time when any shipment may be desired.

The evidence is that plaintiff gave the defendant its schedule for track material on July fifteenth, that the material was not furnished in accordance with the schedule, though repeatedly demanded, and that the last of the track material was received the middle of December, 1929.

There was evidence to the effect that the plaintiff was delayed

because of defendant's failure to secure a certain right of way, which was not obtained by defendant until October 5, 1929.

Plaintiff continued on the job, working in frozen ground under deep snow, with the thermometer reaching at one time forty degrees below zero, all of which increased the cost of the work.

The work was finished December 31, 1929. When the engineers took up the question of the added cost to the plaintiff by reason of the delays, it appears that the assistant engineer of the defendant agreed that there was merit in plaintiff's claim.

On April 9, and again on November 17, 1930, plaintiff wrote to the defendant, making the claims upon which this action is founded. The defendant then agreed to arbitrate the claim, but later refused to do so.

So far as the record shows, at no time until the close of the plaintiff's case was the point raised with respect to the third paragraph in article 26 of the contract, which I have quoted, and upon which, at the close of plaintiff's case, the complaint was dismissed.

Two questions are raised on this appeal:

1. Does the quoted clause in the contract preclude the plaintiff from recovering the damage suffered by reason of the delays caused by the defendant in failing to perform its side of the contract?

2. Did the defendant waive this clause in the contract by taking up for consideration the claims presented, acknowledging that there was merit to them, asking for revised bills of the claims and agreeing to arbitrate the same, without raising this question?

The defendant undertook to provide the right of way; to furnish all track material, excepting ties, in accordance with a schedule; to furnish plans for the bridge which the plaintiff was to erect.

It is in proof that the defendant did not have the right of way at the time the contract was made (a fact not disclosed to plaintiff); defendant acquired it some months thereafter; defendant did not furnish the track material in accordance with the schedule, and the delays from these several causes prevented the plaintiff from finishing the work by November seventh.

It does not seem to me that the parties contemplated by their agreement to throw the loss on plaintiff by reason of the above-quoted clause of the contract.

The agreement is on a printed form, which I think we can assume is used by the defendant for its construction contracts. It is supplemented by typewritten provisions applicable to the particular work to be done.

To ascertain the intention of parties entering into a contract, we have well-recognized elementary rules of construction to guide us. The following seem applicable here:

Where contracts are partially written and partially printed, and there is a conflict between the two parts, the written portion prevails.

In case of conflict or ambiguity in the agreement, it is to be construed most strongly against the party who drew it, and any promise is to be construed in the way that the promisee had good reason to understand it.

Words intended to exempt a party from liability because of its own fault are to be construed strictly against it.

A contract will not be so construed as to put one party at the mercy of the other. (*Gillet* v. *Bank of America,* 160 N. Y. 549.)

Specific provisions of a contract or statute prevail over general provisions.

It is the duty of one party, for whom another is doing work under a contract, to do his or its part to facilitate the work. (*Mansfield* v. *N. Y. C. & H. R. R. R. Co.,* 102 N. Y. 205.)

In construction contracts, where the owner fails to provide the place, facilities or materials which he has undertaken to furnish, and the contractor is damaged thereby, he may recover.

Applying the stated rules, I do not think the quoted provision of the contract applies to or supersedes the positive engagements which the railroad undertook. It applies rather to delays incident to the operation of the railroad, or to such as are covered in article 34 of the contract having to do with a possible suspension of the work, etc.

Under the rules of construction cited, and reading the contract in all its parts in the light of the evidence on the trial and of the circumstances surrounding its execution and the purposes to be accomplished, in reason it cannot be said that the clause in question has application to the plaintiff's claim. (*Patterson* v. *Meyerhofer,* 204 N. Y. 96; *Johnson* v. *City of New York,* 191 App. Div. 205; affd., 231 N. Y. 564.)

· Appellant contends that even if the provision of the contract which we have discussed were applicable, it was waived by the defendant.

The record shows that there was ample evidence upon which to go to the jury on the question of whether or not defendant waived the provision of the contract under which the complaint was dismissed, but this becomes immaterial in light of our conclusion that the provision in question has no application to the situation here disclosed.

Plaintiff was entitled to go to the jury on the question upon whom rested the responsibility for the delays in the construction

work covered by the contract between the parties and forming the basis of plaintiff's claim for extra compensation.

The judgment should be reversed on the law and the facts and a new trial granted, costs to appellant to abide the event.

LAZANSKY, P. J., KAPPER, CARSWELL and TOMPKINS, JJ., concur.

Judgment reversed on the law and the facts and a new trial granted, costs to appellant to abide the event.